### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
------------------------------X
                              :
KATHY SCOTT                   :      Civil No. 3:20CV01904(SALM)
                              :
v.                            :
                              :
ROBERT GREENE, et al.         :      March 28, 2022
                              :
------------------------------X
```

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Kathy Scott ("plaintiff"), a sentenced inmate in the custody of the Federal Bureau of Prisons ("BOP"),[1] brought this action against Robert Greene, Thomas Wagner, Angela Dukate, Rosemary Johnson, Clinton Chaput, Joseph Agius, Christine Heng, and John/Jane Doe(s),[2] pursuant to Bivens v. Six Unknown Named

---

[1] The Court may take judicial notice of matters of public record. See, e.g., Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006); United States v. Rivera, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate location information); Ligon v. Doherty, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate location information). The Court takes judicial notice of the BOP website, which reflects that Scott is an inmate located at Federal Correctional Institution ("FCI") Danbury. See Find an Inmate, Federal Bureau of Prisons, https://www.bop.gov/mobile/find_inmate/index.jsp (enter "78129-054" into the "Number" field and click "Search") (last visited Mar. 26, 2022). Plaintiff's Amended Complaint confirms that her status is sentenced. See Doc. #53 at 3 ("Plaintiff is, and at all relevant times was, a sentenced inmate at FCI -- Danbury[.]").

[2] On December 17, 2021, plaintiff filed a Motion to Withdraw her claims against defendant Thomas Wagner. See Doc. #54 at 1. On December 20, 2021, the Court granted plaintiff's Motion to

Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

Plaintiff asserts a single count of Deliberate Indifference to Serious Medical Needs, in violation of the Eighth Amendment. See Doc. #53 at 9-10.

Pursuant to Federal Rule of Civil Procedure 56(a), defendants Robert Greene, Joseph Agius, Jane Doe, John Doe, Angela Dukate, Rosemary Johnson, Clinton Chaput, and Christine Heng jointly move for summary judgment on the ground that "Plaintiff failed to exhaust administrative remedies as required under the Prisoner Litigation Reform Act, 42 U.S.C. §1997e(a)." Doc. #57 at 1. For the reasons set forth below, defendants' Motion for Summary Judgment [**Doc. #57**] is **GRANTED**.

I.   **PROCEDURAL BACKGROUND**

On April 8, 2021, defendants Greene, Agius, Dukate, Johnson, Chaput, and Heng filed a Motion to Dismiss, asserting that the action should be dismissed for "for a lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted[.]" Doc. #23 at 1. Defendants asserted that plaintiff had failed to exhaust her administrative remedies, but acknowledged that "a motion for summary judgment is a more appropriate mechanism for resolving the issue of exhaustion in a section 1983 suit because failure to exhaust is

_____

Withdraw, and terminated Thomas Wagner as a defendant in this case. See Doc. #55.

an affirmative defense and the defendants bear the burden of proving non-exhaustion."[3] Doc. #24 at 11. Plaintiff filed a response to defendants' motion to dismiss and a Motion to Amend the Complaint on June 11, 2021. See Docs. #35, #36. Defendants filed a reply to plaintiff's response to the motion to dismiss on June 23, 2021. See Doc. #42.

On October 15, 2021, this case was transferred to the undersigned "for all further proceedings." Doc. #43. On November 18, 2021, the Court conducted a status conference with counsel for all parties. See Doc. #50. During that conference, defendants consented to the filing of the Amended Complaint; plaintiff filed the Amended Complaint on November 30, 2021. See Docs. #50, #53. Also during that conference, the Court inquired whether a limited summary judgment motion should be filed on the issue of exhaustion raised in defendants' motion to dismiss. See Doc. #50. The Court then entered an order permitting defendants to file "motions for partial summary judgment directed to the issue of exhaustion of administrative remedies on or before February 11, 2022." Doc. #51 (emphasis removed). Defendants filed their joint motion on February 11, 2022. See Doc. #57.

---

[3] This action is brought pursuant to Bivens, rather than 42 U.S.C. §1983. However, PLRA exhaustion is still required. See Macias v. Zenk, 495 F.3d 37, 40 (2d Cir. 2007) (applying the PLRA to a Bivens action).

3

Plaintiff filed a response on March 4, 2022. <u>See</u> Doc. #61.

Defendants filed a reply on March 10, 2022. <u>See</u> Doc. #62.

## II.  <u>BOP ADMINISTRATIVE REMEDY PROCEDURE</u>

Inmates incarcerated at Federal Bureau of Prisons facilities have access to "the Administrative Remedy Program[,]" ("ARP") which was developed for the purpose of "allow[ing] an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. §542.10(a). The ARP entails an informal step, followed by three formal steps, and an inmate must fully exhaust her administrative remedies under the program before filing suit in federal court. <u>See</u> 42 U.S.C. §1997e(a).

First, an inmate must seek informal resolution of the issue by "present[ing] an issue of concern informally to staff[.]" 28 C.F.R. §542.13(a). Prison staff must then "attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." <u>Id.</u> An Informal Resolution is submitted on a form "commonly referred to as a 'BP-8.'" <u>Harris v. Wilson</u>, 2:18CV00303(JPH)(DLP), 2019 WL 4542688, at *2 (S.D. Ind. Sept. 19, 2019).

If the inmate is dissatisfied with the informal resolution or lack thereof, she must submit "a formal written Administrative Remedy Request, on the appropriate form (BP-9)[.]" 28 C.F.R. §542.14(a). The inmate must submit this form

4

within "20 calendar days following the date on which the basis for the Request occurred." Id. At this step, the inmate must adhere to certain filing requirements, including using "a separate form for each unrelated issue[;]" completing the complaint within "the space provided on the form[]" and "up to one letter-size ... continuation page[;]" attaching supporting exhibits; and signing and dating the request. 28 C.F.R. §542.14(c). The Warden is required to respond "within 20 calendar days[]" of the filing of the Administrative Remedy Request. 28 C.F.R. §542.18.

Next, "[a]n inmate who is not satisfied with the Warden's response" to her written Administrative Remedy Request "may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. §542.15(a). Again, there are specific requirements the inmate must adhere to when completing the appeal form. See 28 C.F.R. §542.15(b). The Regional Director is required to respond "within 30 calendar days[]" of the filing of the Appeal. 28 C.F.R. §542.18.

Finally, "[a]n inmate who is not satisfied with the Regional Director's response" to her appeal "may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response." 28 C.F.R. §542.15(a). The General Counsel is

required to respond "within 40 calendar days[]" of the filing of the Appeal to the General Counsel. 28 C.F.R. §542.18. "Appeal to the General Counsel is the final administrative appeal." 28 C.F.R. §542.15(a).

The time limits to submit the forms at each step of this process may be extended only for a "valid reason" as set forth in 28 C.F.R. §542.14(b). If, at any level, "the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. §542.18.

The BOP maintains an "electronic record system," known as "the SENTRY database." Barnett v. Harlow, 2:18CV00397(JMS)(MJD), 2019 WL 2373462, at *3 (S.D. Ind. June 5, 2019). This database contains a record of all administrative remedies submitted by an inmate. See id. "Each entry receives a remedy identification number and includes the inmate's Federal Register Number and a short description of the request[.]" Id.; see also Harris, 2019 WL 4542688, at *2 ("Records related to the administrative remedy process are maintained electronically in the SENTRY computer database.").

Within the SENTRY database, BP-9 submissions, the Administrative Remedy Requests, are identified "with the notation 'F1' followed by the remedy identification number." Harris, 2019 WL 4542688, at *2. BP-10 submissions, the Appeals,

are identified "with an 'R1' notation followed by the remedy
identification number." Id. BP-11 submissions, the Appeals to
General Counsel, are identified "with the notation 'A1' followed
by the remedy identification number." Id. Because Informal
Resolutions are "informal attempt[s] at dispute resolution,
[they are] not recorded in the SENTRY database." Id.; see also
Barnett, 2019 WL 2373462, at *3 ("Because this is an informal
attempt at dispute resolution, it is not recorded in the SENTRY
database."); Sykes v. Ratledge, No. 7:17CV00275(WS), 2018 WL
2125955, at *4 n.8 (W.D. Va. May 8, 2018) ("A BP-8 is not
assigned a Remedy Identification Number and is not tracked in
SENTRY. However, an inmate must document evidence of attempting
informal resolution when filing a BP-9."); Moore v. Shaw, No.
5:13CV00130(HCA), 2015 WL 1280954, at *9 (N.D. W. Va. Mar. 20,
2015) ("[T]he ... two remedies that Plaintiff has attached to
his response do not appear in SENTRY because they were requests
for informal resolution that would have occurred prior to the
institution level."); Richardson v. United States, No.
4:10CV01009(JMM), 2012 WL 928706, at *3 n.4 (M.D. Pa. Mar. 19,
2012) ("[I]nformal resolution attempts that are filed prior to
initiating the administrative remedy process are not recorded in
the SENTRY database[.]"); Edelkind v. Killian, No.
09CV05835(SHS)(MHD), 2011 WL 10599973, at *9 (S.D.N.Y. Aug. 31,
2011), report and recommendation adopted, 2013 WL 1501633

(S.D.N.Y. Apr. 12, 2013) ("The SENTRY database can provide a printout for the inmate's entire filings in the administrative-remedy program except that it does not include data regarding his initial, informal resolution requests."); Herrera-Cubias v. Fox, No. 08CV00517(TUC)(JMR), 2010 WL 11492279, at *3 (D. Ariz. Sept. 16, 2010) ("The attempts at informal resolution -- or Informal Requests -- are not entered into SENTRY[.]" (citation to the record omitted)).

## III.  **FACTUAL BACKGROUND**

The following facts are derived from the parties' submissions pursuant to Local Rule 56(a) and the affidavits, declarations, and exhibits attached thereto.

"In order to exhaust their administrative remedies, prisoners must complete the" ARP "set forth in 28 C.F.R. Part 542, Subpart B." Doc. #60 at 1. Defendants provided a report from the SENTRY database that "contains a record of all the administrative remedies filed by an inmate while housed in any federal institution of the Bureau of Prisons, the dates thereof, and the dispositions." Doc. #58-2 at 2; see also Doc. #58-1. The report is accompanied by a sworn statement from a Legal Assistant certifying that it is a "true and accurate copy" of the SENTRY database, and that plaintiff "did not file any administrative remedies relevant to the allegations in the instant complaint." Doc. #58-2 at 2.

Plaintiff disputes that defendants' exhibit is a true and accurate copy of the SENTRY database because it does not contain the Informal Resolutions dated April 18, 2019, and September 5, 2019, or the Request for Administrative Remedy dated April 27, 2019.[4] See Doc. #60 at 2; see also Docs. #60-1 at 1-2; #60-2 at 1-2; #60-3 at 1.

Defendants do not dispute that plaintiff submitted an Informal Resolution on April 18, 2019, relating to her ankle. See Doc. #58 at 10; see also Doc. #58-5 at 1. Defendants do not admit or deny whether the September 5, 2019, Informal Resolution was submitted. See Doc. #62 at 2-3 (acknowledging plaintiff's exhibit including the September 5, 2019, Informal Resolution, but responding only that "[a]ssuming" it "was properly filed by Plaintiff," it is only an "initial step[]" of the ARP). This form was signed by the Correctional Counselor on September 6, 2019, and the Unit Manager on September 8, 2019, demonstrating that it was received by BOP staff. See Doc. #60-3 at 1. However, as discussed above, Informal Resolutions are not recorded in the SENTRY database. See discussion supra Section II.

With respect to the April 27, 2019, Request for Administrative Remedy, defendants dispute whether plaintiff

---

[4] Plaintiff characterizes these forms collectively as "grievances[.]" Doc. #60 at 2. However, the forms themselves are titled "Informal Resolution[,]" Docs. #60-1 at 1-2, #60-3 at 1, and "Request for Administrative Remedy[.]" Doc. #60-2 at 1.

<u>filed</u> this form properly, such that it would be reflected in the SENTRY database. <u>See</u> Doc. #62 at 2.

The SENTRY database contains the details of "administrative remedies[]" submitted by plaintiff "over the course of her incarceration[.]" Doc. #58-2 at 2. The search of the SENTRY database was executed on April 15, 2021, <u>see</u> <u>id.</u>, and reflects that plaintiff filed nine administrative remedies. <u>See</u> Doc. #58-1 at 6 ("9 Remedy Submission(s) Selected"). The first administrative remedy was filed on January 31, 2019, and the most recent administrative remedy, at the time of the search, had been filed on July 20, 2020. <u>See</u> Doc. #58-1 at 2-6. Eight administrative remedies involved complaints regarding the "pill line" and one was an "RIS Request[.]" <u>See</u> <u>id.</u> Three of these administrative remedies were appeals. <u>See</u> <u>id.</u> at 3-4 (Remedy ID 966286-R1 dated March 11, 2019, with the remark: "Your appeal was due by 3-1-19. It was received on 3-11-19."; Remedy ID 970589-R1 dated April 23, 2019, with the remark: "You may only submit one BP10 for this appeal. You sent two."; Remedy ID 970589-R2 dated May 8, 2019, with the remark: "You may only submit one BP10 for this appeal. You sent two."). No administrative remedies are reflected in the SENTRY report relating to the claims at issue in this case.

Plaintiff's claims concern medical conditions relating to her ankle, left eye, right eye, and teeth.

### A.   Ankle

On April 8, 2019, plaintiff injured her ankle. <u>See</u> Doc.
#60-4 at 1 (medical records dated April 8, 2019, indicating that
plaintiff reported she "slipped to [the] floor and twist[ed her]
right ankle"); <u>see also</u> Doc. #60 at 5 (plaintiff's "Additional
Material Facts" stating that "she felt dizzy, slipped, and fell,
thereby injuring her ankle[]"). It is undisputed that on April
18, 2019, plaintiff submitted an Informal Resolution (BP-8)
relating to her ankle injury. <u>See</u> Doc. #60-1 at 1-2; Doc. #58-5
at 1. This form contains a signed note, dated April 30, 2019,
that states: Inmate "was seen 4/8/2019, 4/11/2019, 4/22/2019,
sent to emergency room when x-ray was completed. Seen by
orthopedist 4/26/2019 whom recommended surgery. Surgery
performed 4/29/2019." Doc. #60-1 at 1; Doc. #58-5 at 1 (sic).
Plaintiff asserts that she also filed a Request for
Administrative Remedy related to this injury on April 27, 2019.
<u>See</u> Doc. #60 at 6; Doc. #60-2 at 1-2. Plaintiff provided a copy
of the Request for Administrative Remedy Form that is completed,
signed by plaintiff, and dated April 27, 2019. <u>See</u> Doc. #60-2 at
1-2. This form shows no response from the Warden or Regional
Director. <u>See</u> <u>id.</u> at 1. The SENTRY database likewise does not
reflect that a Request for Administrative Remedy was filed by
plaintiff on April 27, 2019. <u>See</u> <u>generally</u> Doc. #58-1. The
record contains no other Informal Resolutions or any other

administrative remedy relating to plaintiff's ankle injury, and
no appeals.

**B.   Left Eye**

On September 2, 2019, plaintiff was seen by prison medical
staff for "visual disturbance, especially to left eye." Doc.
#60-5 at 3. On September 5, 2019, plaintiff submitted an
Informal Resolution complaining that she could "not see out of
[her] left eye[]" and asking to be seen by an eye doctor. Doc.
#60-3 at 1.[5] This form was signed by the Correctional Counselor
on September 6, 2019, and the Unit Manager on September 8, 2019,
and reflects that informal resolution was not accomplished. See
id. The record does not contain any additional informal
resolutions or any administrative remedies relating to
plaintiff's left eye.

---

[5] Plaintiff was seen by medical providers on multiple occasions
for concerns relating to her left eye. Plaintiff was seen for
"vision problems in her left eye" on September 7, 2019, Doc.
#60-5 at 5; for "[l]eft eye retinal detachment" on September 8,
2019, id. at 8; for "discomfort in left eye[]" on September 13,
2019, id. at 9; for a follow up from the September 2, 2019,
visit on September 18, 2019, see id. at 13; for "constant[]"
blurred vision in her left eye on September 19, 2019, id. at 15;
for "Mac off Rhegmatogenous Retinal Detachment" on September 23,
2019, id. at 19; for a "post-op visit as mandated by the
ophthalmologist[]" on October 2, 2019, id. at 22; and for
continued vision problems in her left eye on October 30, 2019,
see id. at 23, November 20, 2019, see id. at 25, December 11,
2019, see id. at 27, and July 22, 2020. See id. at 29.

### C.   Right Eye

Plaintiff asserts that "[i]n or about of March of 2020, Plaintiff ... began to experience medical issues with her right eye, including, but not limited to, blurry and distorted vision." Doc. #53-1 at 8 (sic). Plaintiff asserts that she "made multiple complaints" about her right eye and was later "diagnosed with a visceral tear in her right eye." Id. The medical records pertaining to plaintiff's right eye are limited to an October 5, 2018, report of exam results that states: "Cataract: Nuclear R[.]" Doc. #60-5 at 1. The record does not contain any Informal Resolutions or administrative remedies relating to plaintiff's right eye.

### D.   Teeth

On July 6, 2020, plaintiff "complained of hot and cold sensitivity, pointing to [tooth] #29[.]" Doc. #60-6 at 1 (medical records dated July 6, 2020). At that visit, defendant Heng "[r]ecommended extraction #30 at this time and reevaluate #29[.]" Id. at 2 (sic). Tooth #30 was extracted on that same date. See id. at 3. On July 20, 2020, plaintiff was again seen for pain in tooth #29, see id. at 4, and on July 28, 2020, plaintiff requested extraction of tooth #29. See id. at 6. Tooth #29 was extracted on that same date. See id. at 7. The record does not contain any Informal Resolutions or administrative remedies relating to plaintiff's teeth.

13

IV.   <u>**SUMMARY JUDGMENT STANDARD**</u>

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists." <u>Marvel Characters, Inc. v. Simon</u>, 310 F.3d 280, 286 (2d Cir. 2002). The moving party may discharge this burden by "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." <u>Goenaga v. March of Dimes Birth Defects Found.</u>, 51 F.3d 14, 18 (2d Cir. 1995).

In deciding a motion for summary judgment, the Court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." <u>Beyer v. Cnty. of Nassau</u>, 524 F.3d 160, 163 (2d Cir. 2008) (citation and quotation marks omitted). "If there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." <u>Am. Home Assur. Co. v. Hapag</u>

14

Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006)
(citation and quotation marks omitted).

**V.**   **DISCUSSION**

**A.   Applicable Law**

The Prisoner Litigation Reform Act ("PLRA") provides: "No
action shall be brought with respect to prison conditions under
section 1983 of this title, or any other Federal law, by a
prisoner confined in any jail, prison, or other correctional
facility until such administrative remedies as are available are
exhausted." 42 U.S.C. §1997e(a). "[T]he PLRA's exhaustion
requirement applies to all inmate suits about prison life,
whether they involve general circumstances or particular
episodes, and whether they allege excessive force or some other
wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

"The Supreme Court has held that this provision requires an
inmate to exhaust administrative remedies before filing any type
of action in federal court, regardless of whether the inmate may
obtain the specific relief he desires through the administrative
process." Medina v. Somers, No. 3:10CV00299(JBA), 2011 WL
2844301, at *2 (D. Conn. July 14, 2011). "The Supreme Court has
[further] held that 'the PLRA exhaustion requirement requires
proper exhaustion.' That is, 'prisoners must complete the
administrative review process in accordance with the applicable
procedural rules -- rules that are defined not by the PLRA, but

by the prison grievance process itself.'" <u>Johnson v. Killian</u>,
680 F.3d 234, 238 (2d Cir. 2012) (quoting <u>Woodford v. Ngo</u>, 548
U.S. 81, 93 (2006); and then quoting <u>Jones v. Bock</u>, 549 U.S.
199, 218 (2007)). "The PLRA's exhaustion requirement is designed
to afford corrections officials time and opportunity to address
complaints internally before allowing the initiation of a
federal case." <u>Johnson v. Testman</u>, 380 F.3d 691, 697 (2d Cir.
2004) (citation and quotation marks omitted).

A prisoner, however, "need exhaust only 'available'
administrative remedies." <u>Ross v. Blake</u>, 578 U.S. 632, 638
(2016). The Supreme Court has identified "three kinds of
circumstances in which an administrative remedy, although
officially on the books, is not capable of use to obtain
relief." <u>Id.</u> at 643.

> Those circumstances are when: (1) the grievance
> process "operates as a simple dead end -- with officers
> unable or consistently unwilling to provide any relief
> to aggrieved inmates"; (2) the process is "so opaque
> that it becomes, practically speaking, incapable of
> use"; or (3) "prison administrators thwart inmates from
> taking advantage of a grievance process through
> machination, misrepresentation, or intimidation."

<u>Rucker v. Giffen</u>, 997 F.3d 88, 93 (2d Cir. 2021) (quoting <u>Ross</u>,
578 U.S. at 643-44). The Second Circuit has further held "that
administrative remedies are 'unavailable[,]'" as contemplated by
<u>Ross v. Blake</u>, "when (1) an inmate's failure to file for the
administrative remedy within the time allowed <u>results from</u> a

medical condition, and (2) the administrative system does not accommodate the condition by allowing a reasonable opportunity to file for administrative relief." Id. at 94 (emphasis added). Still, "an inmate seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money." Booth v. Churner, 532 U.S. 731, 734 (2001).

"Once defendants have met their initial burden of demonstrating that a grievance process exists ... a plaintiff bears the burden of demonstrating that other factors rendered a nominally available procedure unavailable as a matter of fact." White v. Velie, 709 F. App'x 35, 38 (2d Cir. 2017) (citation and quotation marks omitted).

## B.  Analysis

### 1.  Unavailability of Grievance Process

Defendants contend that they are entitled to judgment as a matter of law "because Plaintiff failed to exhaust administrative remedies as required under the Prisoner Litigation Reform Act, 42 U.S.C. §1997e(a)." Doc. #58 at 1. Plaintiff responds that she did not need to exhaust her administrative remedies "because the remedies that Plaintiff sought for her urgent medical needs were unavailable through that process." Doc. #61 at 2.

The exhaustion requirement under the PLRA is strict and can be excused only under the PLRA's "own, textual exception to mandatory exhaustion." Ross, 578 U.S. at 642. "[T]he PLRA's exhaustion requirement may not be excused under any judicially created exception doctrine." McPherson v. Lamont, 457 F. Supp. 3d 67, 79 (D. Conn. 2020).

Plaintiff concedes that the BOP has an available grievance process: the ARP. See Doc. #60 at 1 (plaintiff's response to defendants' statement of material facts admitting that an inmate must complete the "Administrative Remedy Program ... set forth in 28 C.F.R. Part 542, Subpart B[]"). Plaintiff states: "The issue before the Court here is whether the Plaintiff was required to exhaust the available administrative remedies for her above-described medical afflictions." Doc. #61 at 10. Plaintiff asserts that she was not required to exhaust her administrative remedies because "'[u]ndue delay, if it in fact results in catastrophic health consequences,' can justify waiving an administrative exhaustion requirement" when exhaustion "'would be futile, ... where the administrative process would be incapable of granting adequate relief ... [or] where pursuing agency review would subject [the person seeking relief] to undue prejudice.'" Doc. #61 at 5 (quoting United States v. Sawicz, 453 F. Supp. 3d 601, 604 (E.D.N.Y. 2020)). Plaintiff argues that BOP's ARP "does not provide for remedies

available to inmates experiencing unattended, urgent medical needs, as Plaintiff was here." Id. at 6.

As an initial matter, the Court notes that plaintiff's reliance on United States v. Sawicz is misplaced. The Court in United States v. Sawicz considered a criminal "defendant's motion for compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A)(i) because of the COVID-19 global pandemic and outbreak at the Danbury Federal Correctional Institute[.]" 453 F. Supp. 3d at 602-03. The Sawicz Court found that "[u]ndue delay" resulting in "catastrophic health consequences[]" was an exception to the administrative exhaustion requirement found in 18 U.S.C. §3582(c), not the exhaustion requirement of the PLRA (42 U.S.C. §1997e). Id. at 604. Plaintiff has provided no authority supporting the assertion that such an exception is available under the PLRA, and the Court may not create one. See Booth, 532 U.S. at 741 n.6 ("[W]e stress the point ... that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

Thus, the Court must determine whether plaintiff has met her burden of showing that she was not required to exhaust her administrative remedies under the textual exceptions in the PLRA. See White, 709 F. App'x at 38 (explaining that the burden shifts to plaintiff to establish that the grievance process was

19

unavailable to her after defendants establish that a grievance process exists). Plaintiff must show that the BOP's ARP was "unavailable" to her. "[T]he concept of 'availability' speaks to the 'procedural means, not the particular relief ordered,' since 'one exhausts processes, not forms of relief.'" Linares v. Albrith, No. 9:03CV01408(LEK)(RFT), 2009 WL 799969, at *5 (N.D.N.Y. Mar. 25, 2009) (quoting Booth, 532 U.S. 731 at 739). The grievance process is unavailable only if it does not afford "the possibility of some relief for the action complained of[.]" Booth, 532 U.S. at 738 (emphases added).

Plaintiff seeks monetary damages and "injunctive relief in the form of an order enjoining Defendants or any of them from continuing their deliberate indifference to Plaintiff's serious medical needs as alleged[.]"[6] Doc. #53 at 10-11. "There is no question that the BOP could have provided the additional medical care ... [s]he seeks by responding to a properly filed administrative grievance." Macias, 495 F.3d at 42 (rejecting plaintiff's assertion that he was not required to exhaust his administrative remedies when the relief sought included monetary

---

[6] Even if plaintiff had not sought any injunctive relief, an inmate "cannot 'skip the administrative process simply by limiting prayers for relief to money damages' regardless of whether the BOP was authorized to provide them." Macias, 495 F.3d at 42 (quoting Booth, 532 U.S. at 741).

and "injunctive relief, including more responsive medical care and continuous administration of pain medication[]").

Plaintiff asserts that the grievance process "could [not] have relieved Plaintiff of Defendants' inadequate medical care." Doc. #61 at 11. With respect to her tooth, plaintiff characterizes the grievance process as "futile" because nothing could be done "after the wrong tooth was already removed." Id. at 10 n.4. However, "Congress eliminated the 'effectiveness' prerequisite to §1997e(a) defenses, which indicates Congress's intent to preclude futility or other exceptions from the exhaustion requirement." Nunez v. Goord, 172 F. Supp. 2d 417, 428 (S.D.N.Y. 2001). The PLRA's exhaustion requirement remains in place, with only its limited textual exception, because it gives "prison officials the first opportunity to address prisoners' complaints[.]" Ruggiero v. Cnty. of Orange, 467 F.3d 170, 178 (2d Cir. 2006).

> Such an opportunity allows the prison to take corrective action, which may satisfy the prisoner and obviate the need for litigation; it might result in improvements to prison administration; and, for those cases that do find their way into the courts, it will facilitate adjudication by ensuring a fully—developed administrative record that "clarifies the contours of the controversy."

Id. (quoting Porter, 534 U.S. at 525). "While [plaintiff] may not have been interested in the results that pursuing [her] claim through [BOP's] grievance procedure would have yielded,

the larger interests at stake under the PLRA were at issue, and thus exhaustion was required." Id.; see also Hartry v. Cnty. of Suffolk, 755 F. Supp. 2d 422, 431-32 (E.D.N.Y. 2010) (holding that plaintiff was required to exhaust his administrative remedies even where he had already been transferred to a different facility, which was the relief he sought); Rodriguez v. Senkowski, 103 F. Supp. 2d 131, 134 (N.D.N.Y. 2000) (holding that plaintiff was required to exhaust his administrative remedies after he had been transferred to a different facility because "the relief sought has punitive and procedural value beyond the well-being of the Plaintiff himself[]"). Accordingly, plaintiff's assertion that she was not required to exhaust her administrative remedies because she would not have been able to obtain through the ARP the relief she now seeks lacks merit.

The Court also notes that plaintiff had used the grievance process at least nine times in relation to other issues prior to initiating this lawsuit, supporting defendants' assertion that the grievance process was not "unavailable" to plaintiff. See, e.g., Nunez, 173 F. Supp. 2d at 428 (considering that plaintiff "was aware of [the] grievance procedure, and previously had availed himself to it[]"); Williams v. King, 56 F. Supp. 3d 308, 329 (S.D.N.Y. 2014), order clarified, 56 F. Supp. 3d 389 (S.D.N.Y. 2014), aff'd in part, vacated in part, 679 F. App'x 86 (2d Cir. 2017), and aff'd, 679 F. App'x 86 (2d Cir. 2017)

(finding that "administrative remedies were available to"
plaintiff because he "was aware of the available administrative
remedies as he had previously filed and appealed
other grievances[]"). The SENTRY log reveals that plaintiff had
filed multiple administrative remedies, including appeals, on
other issues, "thereby demonstrating that Plaintiff generally
knew that [s]he was required to exhaust [her] administrative
remedies prior to filing suit." Conklin v. Bowen, No.
9:12CV01478(MAD)(TWD), 2014 WL 4063294, at *4 (N.D.N.Y. Aug. 14,
2014); see also Doc. #58-1 at 3-4.

Accordingly, plaintiff has not met her burden of showing
that the grievance process was "unavailable" to her.

2.   Exhaustion of Administrative Remedies

Because the grievance process was not "unavailable" to
plaintiff, she was required to exhaust her administrative
remedies before filing an action in this Court. Plaintiff seeks
relief related to four medical issues: "a broken ankle, a torn
and detached retina [in her left eye], a visceral tear in her
right eye and a removed tooth." Doc. #53 at 9. Plaintiff does
not claim to have exhausted her administrative remedies. See
Doc. #60 at 4 (asserting that plaintiff pursued administrative
relief only "on April 18, 2019, regarding her ankle injury, and
on September 5, 2019, regarding her vision[]"); Doc. #61 at 10
n.3 (asserting that plaintiff only "beg[a]n the grievance

process with regard to ... her ankle and eye injuries[]"
(emphasis added)); Doc. #61 at 11 (asserting that "there was
nothing for her to exhaust[]"). Plaintiff's failure to exhaust
is supported by the evidence, and she cannot contend otherwise.

With respect to plaintiff's left eye, the evidence shows
that plaintiff completed one Informal Resolution (BP-8) Form on
September 5, 2019, and informal resolution was not accomplished.
See Doc. #60-3 at 1. Plaintiff has not asserted or provided any
evidence showing that she completed any of the three formal
administrative remedy steps with respect to her left eye. See
Doc. #60 at 7 (asserting only that plaintiff "filed an informal
resolution" and made some complaints to prison staff regarding
her left eye condition).

With respect to plaintiff's right eye, plaintiff asserts
only that she "made multiple complaints" regarding her "medical
issues[,]" including her right eye. Doc. #53 at 8. However,
plaintiff has not provided any evidence showing that she sought
an informal resolution or completed any of the required steps of
the ARP. See generally Doc. #60 at 5-9 (plaintiff's additional
material facts lacking any assertion that plaintiff submitted an
Informal Resolution or administrative remedy relating to her
right eye). "Regardless of whether" a plaintiff's "informal
complaints put the prison officials on notice of [her] grievance
'in a substantive sense,'" it is clear that "a prisoner must

24

also <u>procedurally</u> exhaust [her] available administrative
remedies." <u>Macias</u>, 495 F.3d at 43 (quoting <u>Johnson v. Testman</u>,
380 F.3d at 697).

Similarly, with respect to plaintiff's tooth, plaintiff has
provided no evidence that she submitted an Informal Resolution
or completed <u>any</u> of the required steps of the ARP. Plaintiff
contends that she "complained" of her tooth pain, Doc. #61 at 9-
10, but does not contend and has not provided any evidence
suggesting that she engaged in the grievance process. <u>See</u> Doc.
#60 at 9 (indicating that plaintiff only complained to prison
staff regarding her tooth pain). Again, informal complaints to
prison staff are not sufficient to exhaust an inmate's
administrative remedies. <u>See</u> <u>Macias</u>, 495 F.3d at 43.
Accordingly, plaintiff did not exhaust her administrative
remedies with respect to her eye or tooth conditions.

The evidence relating to plaintiff's ankle shows that
plaintiff submitted an Informal Resolution (BP-8) on April 18,
2019, stating that she hurt her ankle and needed an x-ray. <u>See</u>
Doc. #60-1 at 1-2; Doc. #58-5 at 1. Plaintiff completed a
Request for Administrative Remedy (BP-9) Form relating to her
ankle on April 27, 2019, but it is unclear if this form was ever
filed. <u>See</u> Doc. #60-2 at 1-2. Plaintiff asserts that this form
was filed. <u>See</u> Doc. #60 at 6. However, defendants have submitted
a copy of the SENTRY database that "contains a record of all the

25

administrative remedies filed by an inmate while housed in any federal institution of the Bureau of Prisons, the dates thereof, and the dispositions[,]" showing no administrative remedy relating to plaintiff's ankle injury, and a sworn statement that plaintiff "did not file any administrative remedies relevant to the allegations in the instant complaint." Doc. #58-2 at 2; see also Doc. #58-1.

Construing these disputed facts in the light most favorable to plaintiff, the non-moving party, the Court accepts for purposes of this ruling that the April 27, 2019, Request for Administrative Remedy was filed. However, the filing of the Request for Administrative Remedy is only the first formal step of the ARP. See 28 C.F.R. §542.14(a). Plaintiff does not assert that she filed an Appeal. See Doc. #61 at 10 n.3 (asserting only that plaintiff "beg[a]n the grievance process with regard to ... her ankle and eye injuries[]" (emphasis added)). Accordingly, plaintiff did not exhaust her administrative remedies as to her ankle injury.

For the aforementioned reasons, the record establishes that plaintiff was required to but failed to exhaust her administrative remedies as to her claims relating to her ankle, left eye, right eye, and tooth conditions. The PLRA requires exhaustion. Failure to exhaust available administrative remedies entitles defendants to summary judgment. See Torres v. Anderson,

674 F. Supp. 2d 394, 401 (E.D.N.Y. 2009) (granting summary judgment in favor of defendants on plaintiff's <u>Bivens</u> claim where plaintiff failed to exhaust his administrative remedies under the PLRA).

Accordingly, summary judgment is **GRANTED** as to all defendants.

**VI.**   <u>**CONCLUSION**</u>

For the reasons set forth herein, defendant's Motion for Summary Judgment [**Doc. #57**] is **GRANTED.**

Judgment shall enter in favor of all defendants.

The Clerk shall close this case.

It is so ordered this 28th day of March, 2022, at New Haven, Connecticut.

    /s/
HON. SARAH A. L. MERRIAM
UNITED STATES DISTRICT JUDGE